IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MAGELLAN DIAGNOSTICS, INC.,<br><br>Defendant. | Case No: 1:24-cr-10146-PBS |

**JOINT MEMORANDUM IN SUPPORT OF PLEA AGREEMENT**

The United States of America and defendant Magellan Diagnostics, Inc. ("Magellan" or the "Company") (together the "Parties") hereby jointly submit this memorandum in support of the Plea Agreement dated May 21, 2024, ECF 3 (the "Plea Agreement"), as discussed during the pretrial conference with the Court on June 18, 2024.

**I.   Introduction**

On May 21, 2024, Magellan entered into a plea agreement with the United States in which it admitted to two misdemeanor violations of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 331, 333. As part of the resolution, Magellan also entered into a Deferred Prosecution Agreement with the United States ("DPA") in related Case No. 1:24-cr-10144.

Because misdemeanor violations of the FDCA are not subject to mandatory restitution under the relevant federal criminal statutes,[1] the Parties agreed upon an alternate mechanism to achieve their mutual goal of compensating individuals who were harmed by the relevant conduct. The Victim Compensation Program set forth in the DPA accomplishes this goal, and this Court need not order separate restitution to approve the Plea Agreement.

---

[1] *See* Section III(A)(1) and (2), *infra*.

## II. The Proposed Victim Compensation Program

Magellan is a medical device company that manufactures products for detecting lead in the blood. Magellan admitted in the Plea Agreement that (a) its devices produced inaccurately low lead test results in certain circumstances, (b) the Company failed to file a timely Medical Device Report about this issue, (c) and provided its customers new instructions to mitigate the issue without prior FDA clearance.

The United States and Magellan worked closely to structure a resolution that would fairly compensate potential victims. The structure of the Victim Compensation Program is modeled after those used in similar cases, as discussed below. *See e.g., United States v. Avanos*, No. 3:21-cr-00307-E (N.D. Tex. 2021).

The Victim Compensation Program is appropriate under these circumstances. It was designed to identify potential victims, evaluate their claims, and efficiently provide compensation to demonstrated victims. The scope of possible compensation under the Victim Compensation Program is broader than what would be available under traditional restitution orders and will likely reach more potential victims. Specifically, the Victim Compensation Program requires that:

1. The Company establish a Victim Compensation Fund of at least $9.3 million to compensate victims harmed by the conduct described in the DPA between June 27, 2013, and May 31, 2017;

2. The Company publish on its website the resolution with the United States and the availability of victim compensation;

3. The Company initiate a patient identification program to affirmatively identify individuals who many have been harmed, including the obligation to hire at least one fulltime employee responsible for identifying those who may have been harmed;

4. The Company and Office appoint a neutral Claims Administrator[2] that will evaluate victim compensation claims and make recommendations to the United States regarding payments from the Victim Compensation Fund;

5. If the Company reasonably believes that an award is inconsistent with the terms of the DPA or the compensation framework in the DPA, the Company may seek judicial review.

The Plea Agreement provides that the Company will make victims whole through the Victim Compensation Program in lieu of court-ordered restitution. *See* Plea Agreement ¶ 5 ("In light of Magellan's commitments under the Deferred Prosecution Agreement concerning victim identification and establishing a Victim Compensation Program (Exhibit D), the parties agree that no additional restitution shall be awarded in this criminal case."); *see also* DPA, Attachment F ¶ 1 ("The Company agrees to pay victim compensation in connection with the Agreement and in lieu of court-ordered restitution in connection with its guilty plea to the FDCA Information.").

### III. Legal Argument

**A. The Court is Not Required to Order Restitution Here.**

Magellan is pleading guilty to two misdemeanor violations of the FDCA, 21 U.S.C. §§331(a) and 333(a)(1). Neither section contains a restitution provision. Moreover, the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA") and the Victim and Witness Protection Act ("VWPA") do not apply here, as Magellan is not pleading guilty to any of the enumerated offenses in those statutes.

"Federal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by statute." *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996) (internal citation omitted); *see also United States v. Randle*, 324 F.3d 550, 555–56 (7th Cir. 2003)

---

[2] For the purposes of this DPA, the Compliance Monitor retained pursuant to DPA ¶ 14 will also act as the Claims Administrator for the Victim Compensation Fund. *See* DPA ¶ 17 and DPA Attachment F ¶¶ 10-16. The Claims Administrator / Monitor is jointly selected by the Parties as outlined in DPA ¶¶ 14-17.

3

(noting the MVRA and VWPA "authorize federal courts to order offenders to pay restitution to 'victims' of certain crimes."). As neither the misdemeanor FDCA violations in the Plea Agreement, the MVRA, nor the VWPA "explicitly empower[]" federal courts to order restitution, this Court is not required to do so in lieu of the Victim Compensation Program negotiated by the Parties.

1. The MVRA Does Not Apply to Misdemeanor FDCA Violations.

Under the MVRA, courts shall order defendants convicted of specifically enumerated offenses to make restitution to victims of the offense or to the victim's estate. 18 U.S.C. § 3663A(a)(1) (not including misdemeanor FDCA violations). Appellate courts have reversed restitution orders premised on the MVRA at sentencing for the same FDCA violations in the Magellan Plea Agreement. For example, in *United Stated v. Holland*, the Second Circuit found that the MVRA did not apply to the defendant's misdemeanor FDCA offense. 394 F. App'x 766, 768 (2d Cir. 2010) (involving a violation of 21 U.S.C. § 331). The court stated that "[t]he plea agreement and the presentence report ('PSR') stated that the district court was required to order restitution under the Mandatory Victims Restitution Act of 1996 ('MVRA'), 18 U.S.C. § 3663A. That was erroneous; the MVRA does not cover Holland's 21 U.S.C. § 331 offense." *Id.* Similarly, the MVRA does not apply to Magellan's FDCA violations.

2. The VWPA Does Not Apply to Misdemeanor FDCA Violations.

Under the VWPA, courts may order a defendant convicted of specifically enumerated offenses to make restitution to a victim of the offense or the victim's estate. 18 U.S.C. § 3663(a) (not including misdemeanor FDCA violations).

Federal courts have found that the VWPA does not authorize restitution orders in misdemeanor FDCA cases. For example, in *United States v. Guidant LLC*, the Defendant pled

guilty to two misdemeanor violations of the FDCA, 21 U.S.C. §§ 331(q)(1), 331(q)(2), and 360i(g). 708 F. Supp. 2d 903, 908 (D. Minn. 2010). The Plea Agreement did not include a provision ordering restitution, and the alleged victims wanted the court to reject it on that basis. The government and the defendant agreed that the court did not have statutory authority to order restitution. The *Guidant* court agreed because the FDCA violations were not enumerated in the VWPA (or the MVRA). *Id.* at 909 (noting that "the alleged victims have offered no authority to support their assertion that restitution is available under either the VWPA or the MVRA."); *see also United States v. ev3, Inc.*, No. 1:18-cr-10461 (D. Mass. 2018) (district court agreed with parties that restitution order for misdemeanor FDCA violations was not necessary). Similarly, Magellan's misdemeanor FDCA violations do not provide a statutory obligation to order restitution.

### B. Courts Have Permitted Similar Victim Compensation Programs.

Other federal courts have allowed Victim Compensation Programs in lieu of court-ordered restitution. For example, in *United States v. Avanos*, the defendant company pled guilty to felony violations of the FDCA, 21 U.S.C. § 331(a), § 333(a)(2), and 352(a). *Avanos,* 3:21-cr-00307 (N.D. Tex. 2021). Instead of court-ordered restitution, the Avanos DPA established a Victim Compensation Program similar to Magellan's. *See* Avanos DPA ¶¶ 13-22.

Avanos was charged with one count of introducing misbranded surgical gowns into interstate commerce with the intent to defraud and mislead when it falsely labeled the gowns as providing the highest level of protection against fluid and virus penetration. Avanos DPA ¶ 1, 4(i). The Victim Compensation Fund was set up to compensate any purchasers of misbranded MicroCool gowns that were directly and proximately harmed by the conduct in the DPA. Avanos DPA ¶ 13.

Avanos agreed to establish a Victim Compensation Fund of $8,939,000.  Avanos DPA ¶ 13.  The DPA required the money be put in an escrow account and no money would be paid out without prior approval by the Government.  *Id*.  Like the Victim Compensation Program outlined in the Magellan DPA, "[t]he parties agree[d] that the appointment of a Victim Compensation Claims Administrator (the 'Administrator') [wa]s appropriate and necessary to determine the proper administration and disbursement of the Victim Compensation Amount that the Company will pay to the victims of the offense conduct."  Avanos DPA ¶ 14.  The Claims Administrator was tasked with working with Avanos to identify any potential victims.  Avanos DPA ¶ 19-20.

Once located, any potential victim was required to submit a claim to the Claims Administrator within one year.  Avanos DPA ¶ 21.  And lastly, "[t]he Administrator, consistent with a process imposed and required by the Offices, w[ould] make recommendations to the Offices regarding: (a) the purchasers who should receive payments from Victim Compensation Amount; and (b) the compensation amounts that these purchasers should receive.  Only the Offices shall be empowered to make final decisions regarding: (a) the purchasers who should receive the payments from the Victim Compensation Amount; and (b) the compensation amounts that these purchasers should receive."  Avanos DPA ¶ 15.  The *Avanos* court did not object to the parties' proposed method of making victims whole.  This Court should similarly approve of the Victim Compensation Program set forth in the Magellan DPA.

IV. **Conclusion**

For the reasons set forth herein, the Parties respectfully request that the Court accept the Plea Agreement dated May 21, 2024.

Dated: June 26, 2024

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: */s/ Kelly Begg Lawrence*
Kelly Begg Lawrence
James D. Herbert
Leslie A. Wright

*Assistant United States Attorneys*

*/s/ Adam Hollingsworth*
Adam Hollingsworth
JONES DAY
901 Lakeside Ave
Cleveland, Ohio, 44114
Telephone: 1.216.586.7235
Facsimile: 1.216.579.0212
ahollingsworth@jonesday.com

*Counsel for Magellan*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2024, I filed the foregoing motion with the Clerk of the Court using the CM/ECF system, which will be electronically sent to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Kelly Begg Lawrence*
Kelly Begg Lawrence
Assistant U.S. Attorney